UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DEBORAH S.[1] , | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:20-CV-729-MGG |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Deborah S. ("Ms. S") seeks judicial review of the Social Security Commissioner's decision denying Ms. S's application for Disability Insurance Benefits ("DIB") under Title II of the Act. This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g). For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

**I.      OVERVIEW OF THE CASE**

Ms. S applied for DIB on February 16, 2018. In her application, she alleged a disability onset date of June 1, 2017. Ms. S's application was denied initially on July 12, 2018, and upon reconsideration on October 15, 2018. Following a video hearing on June 5, 2019, the Administrative Law Judge ("ALJ") issued a decision on August 19, 2019,

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

which affirmed the SSA's denial of benefits. The ALJ found that Ms. S suffers from the severe impairments of syncopal episodes; fractured left humerus, status post internal fixation; and obesity. The ALJ also found that Ms. S suffers from the non-severe impairments of hypertension, hyperlipidemia, polycythemia, depression, and anxiety. The ALJ found that none of Ms. S's severe impairments, nor any combination of her impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Further, the ALJ found that Ms. S has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), but with certain additional limitations. Ms. S has past relevant work as a general office clerk. In view of Ms. S's RFC, the ALJ found that Ms. S can perform her past relevant work as a general office clerk, both as actually performed and as generally performed. Based upon these findings, the ALJ denied Ms. S's claim for DIB.

## II.　DISABILITY STANDARD

In order to qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the

2

Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### III.   STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). The deference for the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in

3

the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007).

## IV.   ANALYSIS

Ms. S argues that (A) the ALJ erred in evaluating the opinions of her treating provider, Dr. Stillson; that (B) the ALJ omitted mental limitations from the RFC without explanation; and that (C) the GRID rules direct a finding of disability.

### A.   Dr. Stillson's Opinions

For claims filed after March 27, 2017, such as Ms. S's claim, the rules dictating how an ALJ is to weigh medical opinion evidence are set out in 20 C.F.R. § 404.1520c. The regulations require an ALJ to weigh the medical opinion using several factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors considered when analyzing a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ must "explain how [she] considered the supportability and consistency factors," but the

ALJ is not required to explain how she considered the other factors if they are not relevant to the decision. *Id.*

Here, Ms. S asserts that the ALJ erred by giving "illegitimate reasons for rejecting the opinion of [Ms. S's] treating provider, Dr. Stillson." [DE 20 at 12]. Here, Dr. Stillson provided opinion evidence for both Ms. S.'s mental impairments and physical impairments, and Ms. S takes issue with the ALJ's treatment of both portions.

### 1. Dr. Stillson's Opinion Regarding Ms. S's Mental Impairments

Ms. S asserts that the ALJ improperly considered Dr. Stillson's opinion as related to her mental health impairments. Dr. Stillson opined that Ms. S suffers from chronic anxiety, and that her prognosis is "fair to poor." [DE 16 at 840]. Dr. Stillson listed Ms. S's symptoms as fatigue, neurocognitive dysfunction, anxiety, dizziness, syncope, memory disfunction, sensory dysfunction, and headaches. [*Id.*]. He stated that Ms. S could perform activities of daily living (ADLs), but he opined that her daily neurocognitive impairments prevent employment. [*Id.*]. He also opined that her anxiety was poorly controlled, despite medication. [*Id.*]. Dr. Stillson opined that Ms. S would be off task 25% or more of the workday, and that she is incapable of even "low stress" work due to her anxiety, traumatic brain injury, and sensory issues. [*Id.* at 843]. Finally, Dr. Stillson opined that Ms. S would miss more than four days per month due to her impairments, and that her noise sensitivity, agoraphobia and trouble with concentration would affect her ability to work at a regular job on a sustained basis. [*Id.*]. However, the ALJ found this opinion to be unpersuasive, noting that "his actual treatment records note that [Ms. S's] anxiety and depression were fairly stable with medications and his

5

mental status examinations documented no depression and only situational anxiety." [DE 16 at 23].

Ms. S alleges that the ALJ erred in considering Dr. Stillson's opinion in several ways. First, Ms. S. contends that the ALJ erred in rejecting Dr. Stillson's opinion and instead finding that Ms. S's anxiety and depression were fairly stable with medication. Further, Ms. S alleges that the ALJ erred in finding that Dr. Stillson's opinion showed no depression and only situational anxiety. Next, Ms. S contends that the ALJ failed to adequately address an opinion from Dr. Wax in relation to Dr. Stillson's opinion. Finally, Ms. S alleges that the ALJ failed to adequately consider support and consistency factors of Dr. Stillson's opinion as required by 20 C.F.R. § 404.1520c(b)(2).

      **a.    Stability**

First, Ms. S asserts that the ALJ erred in finding her anxiety and depression to be fairly stable with medications. Ms. S cites to *Randi R.W. v. Commissioner of Social Security*, 421 F.Supp.3d 616 (N.D. Ind. 2019) to support her claim; however, this case differs from *Randi R.W.* In *Randi*, this Court held that the ALJ's repeated emphasis on evidence stating the claimant was stable was in error for a multitude of reasons. 416 F.Supp.3d at 623. First, this Court found that the ALJ ignored evidence that contradicted the evidence of stability, and that without further explanation of the evidence, "the ALJ's emphasis on the stability of [the claimant's] MS implies a misunderstanding that stability precludes a finding of disability." *Id*. This Court then noted that a reliance on stability evidence "without further explanation" further suggests that the ALJ relied solely on objective medical evidence in analyzing the claimant's subjective symptoms,

6

which is in error. *Id.* Therefore, this Court found that relying on evidence of stability is in error when the ALJ fails to adequately address the evidence and improperly disregards subjective symptoms. *Id.*

Here, Ms. S is not alleging that the ALJ mischaracterized or cherry-picked evidence in stating that her anxiety and depression are fairly stable. Nor is Ms. S alleging that the ALJ improperly analyzed her subjective symptoms. Ms. S is asserting that noting evidence of stability is enough to warrant remand. However, the ALJ did more than just indicate stability in the evidence. The ALJ relied on evidence showing that Ms. S is capable of independently managing her own medications, completing some housework, acting as a designated driver, attending events, managing her own funds, and driving. [DE 16 at 22]. The ALJ also noted that the psychiatric consultative examiner and the state agency physicians found that Ms. S's anxiety and depression are not severe impairments. [*Id.* at 23]. Even in discussing Dr. Stillson's opinion, the ALJ did not rely on stability evidence alone. The ALJ also noted that Dr. Stillson's treatment notes show no depression and only situational anxiety. [*Id.*]. Ms. S has provided no legal authority or factual evidence to support her assertion that the ALJ erred in relying partially on medical evidence showing that her anxiety and depression were "fairly stable" with medications in finding Dr. Stillson's opinion related to her mental impairments to be unpersuasive.

    **b.**  **No Depression and Situational Anxiety**

Second, Ms. S also takes issue with the ALJ's finding that Dr. Stillson's mental status examinations documented no depression and only situational anxiety. She argues

7

that the ALJ failed to acknowledge Dr. Stillson's finding of anxious mood and affect, and that the ALJ's reliance on a lack of depression is irrelevant to Dr. Stillson's opinion, which is based on Ms. S's anxiety. However, the ALJ acknowledged that Ms. S experienced situational anxiety. [DE 16 at 23]. Dr. Stillson noted anxious mood and affect directly after a serious fall requiring medical treatment. [*Id.* at 723]. However, the majority of Dr. Stillson's treatment notes show no anxiety and no depression, no depressed or anxious mood and affect, normal mood and affect, no unusual anxious features, no expression of overwhelming sadness or gloom, normal psychiatric system exam, and no distress. [*Id.* at 693, 695, 726, 731, 735, 740, 747]. The notations for anxiety occurred directly after falls requiring significant medical attention. [*Id.* at 721, 723]. Ms. S has not provided any medical evidence to contradict the ALJ's finding of no depression and no more than situational anxiety. Ms. S says that the ALJ left out citations to her significant symptoms, "an error in its own right," yet Ms. S provides no evidence in the medical record of any significant symptoms the ALJ failed to consider. [DE 20 at 15].

In this vein, Ms. S further argues that no doctor indicated situational anxiety in the medical record. While Dr. Stillson did not explicitly describe her anxiety symptoms as situational, he only noted anxiety symptoms twice, and both were after falls requiring significant medical attention. [DE 16 at 721, 723]. He otherwise found that she was not showing symptoms of anxiety or depression. [*Id.* at 693, 695, 697, 731, 735, 740, 747]. Despite Ms. S's issue with the ALJ's use of the term "situational," the ALJ supported her findings with evidence in the record, and Ms. S has provided no medical

8

evidence that contradicts the ALJ's decision. Ms. S asserts that the ALJ is being internally inconsistent in calling her anxiety stable, yet finding she has situational anxiety, but again provides no evidence to support her claim. The ALJ properly supported her finding that Ms. S's situational anxiety symptoms were stable on medication using evidence in the record.

      c.      **Examination from Dr. Wax**

Next, Ms. S also argues that the ALJ failed to "confront[] the examination from Dr. Wax, who found significant decreased objective results throughout [her] examination." [DE 20 at 15]. However, once again, Ms. S has not explained how Dr. Wax's examination supported or contradicted Dr. Stillson's opinion. Dr. Wax provided a psychological evaluation in May 2018. [DE 16 at 771]. At the examination, Dr. Wax noted that Ms. S's mood and affect were "a little flat but mostly appropriate." [*Id.* at 772]. Dr. Wax otherwise did not describe any functional limitations related to her mental impairment. [*Id.*]. Ms. S has provided no evidence that Dr. Wax found "significantly decreased objective results," and the medical record shows only that she struggled with serial sevens. [*Id.* at 773]. There is no evidence of decreased objective results from Dr. Wax.

      d.      **Supportability and Consistency**

Finally, Ms. S asserts that the ALJ failed to consider both the supportability and the consistency of Dr. Stillson's opinion as required by 20 C.F.R. § 404.1520c(b)(2). However, as above, Ms. S provides no evidence that the ALJ failed to include or consider in examining Dr. Stillson's opinion. There is no other opinion evidence in the

9

medical record consistent with Dr. Stillson's opinion, and the ALJ notes that both the consultative examiner and the state agency physicians found that Ms. S's mental impairments are non-severe. The ALJ cannot discuss consistent medical opinions if there are none in the record to consider.

Many of the arguments made by Ms. S regarding her mental impairments are undeveloped. She does not support her arguments with evidence in the medical record; rather, she relies on caselaw without linking the caselaw to the facts in the evidence. These undeveloped arguments are waived, as Ms. S has provided no explanation as to how the ALJ erred or what facts in the evidence support her claims. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992); *Handford ex rel. I. H. v. Colvin*, No. 12 C 9173, 2014 WL 114173, at *11 (N.D. Ill. 2014) (applying *Berkowitz* to underdeveloped arguments in a Social Security Appeal); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").

**2. Dr. Stillson's Opinion Regarding Ms. S's Physical Impairments**

Ms. S also alleges that the ALJ erred in finding the portions of Dr. Stillson's opinion related to her physical impairments to be unpersuasive. Dr. Stillson opined that Ms. S would be unable to stand or walk for more than two hours in an eight-hour workday, as well as opined that she could only occasionally lift over 10 pounds. [DE 16 at 841-42]. Dr. Stillson also opined that dizziness was the root cause of Ms. S's symptoms. [*Id.* at 841]. However, the ALJ found that Ms. S's neurological and

cardiovascular findings do not support Dr. Stillson's opinion of her limitations, and that Dr. Stillson's own treatment notes do not support his statements. [*Id.* at 27].

Ms. S alleges that the ALJ erred in considering Dr. Stillson's opinion of her physical impairments in several ways. First, Ms. S contends that the ALJ erred in finding that Dr. Stillson's opinion stated that Ms. S's dizziness was the basis for her functional physical limitations. Moreover, regarding the ALJ's discussion of dizziness, Ms. S also alleges that the ALJ improperly discussed Ms. S's alcohol use. Next, Ms. S contends that the ALJ inappropriately referenced Dr. Stillson's opinion as extreme. Finally, Ms. S alleges that the ALJ erred in evaluating Ms. S's cardiologist's opinion in relation to Dr. Stillson's findings.

### a.  Dizziness as the Basis for Dr. Stillson's Opinion

Ms. S first takes issue with the ALJ's finding that Dr. Stillson opined that dizziness was the basis for his opinions regarding Ms. S's functional physical limitations. However, Dr. Stillson wrote down that he believed Ms. S's dizziness would keep her from standing more than ten minutes at a time, and that she would require fifteen-minute rest periods hourly due to dizziness and fatigue. [DE 16 at 841]. The ALJ properly found that Dr. Stillson opined that her dizziness was the root cause of her symptoms.

In this vein, Ms. S also argues that the ALJ mentioning her alcohol use as part of the evidence improperly implies that her alcohol use causes her syncope episodes. As an initial matter, Ms. S states that the ALJ "repeatedly references" her alcohol use "before a few of these blackouts." [DE 20 at 18]. However, the ALJ at no point implied

11

that alcohol is the cause of her blackouts or syncope. While the ALJ mentions that she was intoxicated before a single syncope episode, she does not repeatedly reference that it occurred before multiple episodes. [DE 16 at 25-26]. The ALJ stated that during an ER visit in October 2017 due to a fall, the hospital noted that Ms. S smelled of alcohol with an alcohol level of .144. [DE 16 at 25]. The ALJ then stated that she was treated for a head laceration, and she was diagnosed with a syncopal episode and alcohol intoxication. [*Id.*]. The ALJ later noted that Ms. S stated she only experienced three syncope episodes, and that she failed to note that she was intoxicated during one of them. [*Id.* at 26]. The ALJ did not imply that alcohol was the cause of all three syncope episodes, but rather noted that she was objectively intoxicated during one of her noted syncope episodes.

Even if the ALJ erred in discussing her intoxication regarding her 2017 syncope episode, this error is harmless. "The doctrine of harmless error indeed is applicable to judicial review of administrative decisions." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). A legal error by the ALJ is harmless "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record [such that] remanding is a waste of time." *Id.* Yet, "the harmless error standard is not … an exercise in rationalizing the ALJ's decision and substituting … hypothetical explanations for the ALJ's inadequate articulation." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

The ALJ did not imply that all of Ms. S's syncope episodes were caused by intoxication. Rather, the ALJ noted that she was intoxicated in the ER after one of her

12

three documented syncope episodes. [DE 16 at 25-26]. The ALJ relied on other evidence in the record in finding that Ms. S's allegations are less severe than she alleges. The ALJ noted that despite alleging daily dizziness and anxiety, the primary care treatment records do not support this allegation, and she did not voice any issues with dizziness or anxiety at her last office visit in November 2018. [DE 16 at 26]. The ALJ also noted that her loop monitor documents no episodes from September 2018 through March 2019, and that Ms. S only alleges three syncope episodes. [*Id.*]. The ALJ did not solely rely on evidence of intoxication prior to a single syncope episode in finding her symptoms are not as severe as she alleges. The ALJ supported her findings with substantial evidence, relying mainly on evidence in the medical record and not, as Ms. S alleges, on her alcohol consumption.

### b. ALJ's Discussion of Dr. Stillson's Opinion as "Extreme"

Ms. S also takes issue with the ALJ calling Dr. Stillson's opinion "extreme," and further noting that his treatment notes are not consistent with his opinion. Ms. S argues that the use of the word "extreme" along with phrases such as "inconsistent with the evidence of the record" is enough for remand, as the ALJ is required to explain how she considered consistency in evaluating medical opinions. [DE 20 at 19]. However, the case Ms. S cites does not support her contention. *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021). The Court in *Tammy* found that the ALJ mischaracterized evidence and committed a factual error in finding that the physician's opinion was unpersuasive because she "did not support her opinion with the objective medical evidence she relied on in making it."

13

forth evidence that supported her opinion, and the ALJ erred in failing to discuss the supportability of the opinion evidence as one of the most important factors under 20 C.F.R. §404.1520c(b)(2). *Id*. Moreover, the ALJ compounded this error by failing to explain why the opinion was inconsistent with the evidence and failed to acknowledge the consistency of the opinion between two other treating specialists. *Id.* The current case vastly differs from *Tammy*.

Here, the ALJ cited to cardiovascular and neurological notes that she found do not support Dr. Stillson's opinion that Ms. S cannot stand or walk for more than two hours in a workday, and that she can only occasionally lift more than ten pounds. [DE 16 at 27]. The ALJ also found that Dr. Stillson's own treatment notes do not support his statements. [*Id.*]. Earlier in the decision, the ALJ notes that Ms. S's treatment notes do not indicate issues with dizziness and that her loop monitor documented no episodes. [*Id.* at 26]. Ms. S does not assert that Dr. Stillson's treatment notes and other objective medical evidence support his statements in his opinion. She also does not assert that there is medical opinion evidence that supports Dr. Stillson's opinion. As such, Ms. S provides no factual argument to support her allegations that this case is similar to *Tammy*.

While the ALJ does not fully discuss every treatment note from Dr. Stillson, his treatment notes frequently indicate no complaints of dizziness [DE 16 at 691, 718, 721]. His treatment notes indicate that she has had MRI scans that ruled out neurological causes, and a loop recorder that showed no events. [*Id.* at 697, 716]. Ms. S provides no

14

medical evidence that would support Dr. Stillson's opinion, and the ALJ properly supported her decision with evidence in the record.

### c. Dr. Lu's Medical Opinion in Relation to Dr. Stillson

Ms. S asserts that the ALJ erred in finding that neurological and cardiovascular findings do not support Dr. Stillson's opinion. In doing so, Ms. S argues that the ALJ erred in evaluating the opinion of her cardiologist, Dr. Lu. Dr. Lu's treatment notes indicate that her tilt table test, EKG, Holter monitor, and echocardiogram did not show any abnormalities, and her looper recorder recorded no significant events. [DE 16 at 893]. Dr. Lu noted that Ms. S did not complain of dizziness or syncope, but she was still experiencing "some chest palpitations." [*Id.*]. Dr. Lu further stated that Ms. S had a history of fainting, and that her syncope was not predictable. [*Id.* at 906]. She stated that the etiology of Ms. S's syncope is unknown. [*Id.* at 907]. The rest of Dr. Lu's opinion is bereft of functional limitations, with Dr. Lu answering "as tolerated" to multiple questions regarding Ms. S's functional limitations. [*Id.* at 907-09]. Dr. Lu left the majority of the opinion blank, and instead wrote "[please] see my clinic note" when asked to describe the limitations that would affect Ms. S's ability to work full time. [*Id.* at 909]. Dr. Lu's clinic note stated that Ms. S has experienced two episodes of syncope, but that all testing has shown normal results. [DE 16 at 910-11]. No functional limitations were included in the clinic note outside of a single suggestion to avoid driving. [*Id.* at 910].

Based on this, the ALJ stated that Dr. Lu found no functional limitations outside of a suggestion to avoid driving. The ALJ then stated that Ms. S does not require a

15

specific restriction regarding motor vehicle usage, however, due to her lack of objective syncope findings, her history of alcohol use, and her admission that she continues to drive despite Dr. Lu's warnings. [DE 16 at 26-27]. Ms. S takes issue with the ALJ's statement that Dr. Lu found no functional limitations. Ms. S asserts that Dr. Lu did not opine that Ms. S has "no limitations," and therefore the ALJ is wrong in finding that Dr. Lu found no functional limitations. However, Dr. Lu did not provide any functional limitations despite being provided a checkbox form on which to provide them. This wordplay from Ms. S both misstates the ALJ's findings and nitpicks the decision. The ALJ did not state that Dr. Lu found that Ms. S has no limitations, but rather the ALJ stated that Dr. Lu's opinion "found no functional limitations." [*Id.* at 26]. Dr. Lu's opinion was largely left blank, particularly regarding functional limitations, and the ALJ correctly noted that no functional limitations were found in Dr. Lu's opinion. The Court is unconvinced by Ms. S's argument regarding the way in which the ALJ worded this sentence, as Dr. Lu's opinion and following clinic note do not describe or indicate any functional limitations.

Finally, Ms. S uses Dr. Lu's opinion and clinic note to argue that the ALJ incorrectly found that her dizziness was not supported by neurological and cardiovascular findings. While Dr. Lu stated that the etiology of her syncope episodes had not yet been determined, the ALJ did not err in finding that her neurological and cardiovascular testing did not indicate a reason for her dizziness. [DE 16 at 907]. Ms. S makes the argument that the ALJ should have considered that Dr. Lu was actively working on why Ms. S continued to experience syncope, but she makes no factual or

legal argument for how the ALJ erred in correctly stating that cardiovascular and neurological testing did not support her complaints of dizziness. The ALJ has not stated that Ms. S is not experiencing syncope; on the contrary, the ALJ found her syncope to be a severe impairment. [*Id.* at 21]. Rather, the ALJ is stating that her complaints of daily dizziness are not supported by the objective medical evidence. [*Id.* at 26-27]. The ALJ also found that a medical record showing three total episodes of syncope across four years does not indicate a need for further functional limitations. [*Id.*]. Ms. S has not provided any arguments or medical evidence regarding a need for further limitations.

### B. Mental Limitations in the RFC

Ms. S's second overall argument is that the ALJ erred in failing to explain why she did not include any mental limitations in the RFC despite finding Ms. S had mild limitations in the paragraph B criteria. As stated in multiple other areas in this opinion, Ms. S does not provide any arguments for what limitations should have been included, nor does she provide evidence to support further limitations. Ms. S bears the burden of proving she has a disability and requires limitations in her RFC. *See* 20 C.F.R. § 404.1512(a) ("[i]n general, you have to prove to us that you are blind or disabled."). Ms. S has not provided any evidence or arguments that she required further limitations in the RFC for her non-severe mental impairments.

Furthermore, the ALJ explicitly stated that although Ms. S alleges anxiety and depression, "there is no evidence of any significant cognitive or functional limitations as a result." [DE 16 at 22]. The ALJ relied on Ms. S's ability to independently manage her medications, complete some housework, attend events, act as a designated driver, and

17

manage her own funds in finding she did not require limitations in the RFC. [*Id.*]. The ALJ stated why she did not provide further mental limitations in the RFC, and Ms. S has not provided any evidence to the contrary.

### C.    GRID Rules

Ms. S concludes her brief by asserting that the GRID rules direct a finding of disability. She alleges that her age, combined with the lack of mental limitations in the RFC, as well as the ALJ's finding that she could perform her past work, all result in a finding of disability due to the GRID rules. However, as stated above, the ALJ supported her decision regarding Ms. S's mental limitations with substantial evidence, and therefore neither remand nor an award of benefits is appropriate. Similarly, the ALJ properly found she could perform past work, as the ALJ did not err in failing to provide further mental restrictions in the RFC. Ms. S has once again failed to provide any evidence that she required further limitations in the RFC, or that she could not perform her past relevant work. Ms. S asks the Court to reweigh evidence, which it cannot do. *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000).

### V.    CONCLUSION

For the reasons stated above, the ALJ's decision is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the decision of the ALJ.

**SO ORDERED** this 24th day of March 2022.

s/Michael G. Gotsch, Sr.  
Michael G. Gotsch, Sr.  
United States Magistrate Judge